Michael J. Nader, CA Bar No. 200425
Michael.Nader@ogletree.com
George J. Theofanis, CA Bar No. 324037
george.theofanis@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
400 Capitol Mall, Suite 2800
Sacramento, CA  95814
Telephone:    916-840-3150
Facsimile:    916-840-3159

Attorneys for Defendant
COMPUTERSHARE INC.

# IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

| | |
|---|---|
| ERIN ASHLEY SAULS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>COMPUTERSHARE, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. _____<br><br>**DEFENDANT COMPUTERSHARE INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>[Filed concurrently with Civil Cover Sheet; Corporate Disclosure Statement; Declarations of Zach Minute and George Theofanis in Support of Removal]<br><br>[Sacramento County Superior Court Case No. 24CV024211]<br><br>Action Filed:      11/26/2024<br>Trial Date:         TBD |

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF ERIN ASHLEY SAULS AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT Defendant COMPUTERSHARE INC. ("Defendant" or "Computershare"), by and through the undersigned counsel, hereby removes the above-entitled action from the Superior Court of the State of California for the County of Sacramento to the United States District Court for the Eastern District of California pursuant to 28 U.S.C. Sections 1332, 1441, and 1446.[1]  In support of such removal, Computershare states as follows:

---

[1] The foregoing facts were true at the time the Complaint in this matter was filed and remain true as of the date of the

1

1. Computershare removes this action on the grounds that: **(a)** there is complete diversity of citizenship between Plaintiff Erin Ashley Sauls ("Plaintiff"), a citizen of the State of California, and Computershare, a citizen of the States of Delaware and Massachusetts; and **(b)** the amount in controversy exceeds the jurisdictional minimum of $75,000 set forth in Section 1332(a).

## I. THE STATE COURT ACTION

2. On November 26, 2024, Plaintiff, by and through her attorney, filed a civil action in the Superior Court of the State of California for the County of Sacramento, entitled: *Erin Ashley Sauls, individually, and on behalf of all others similarly situated, Plaintiff, v. Computershare Inc., a California Corporation; and DOES 1 through 10, inclusive, Defendants* (Case No. 24CV024211).  (Declaration of George J. Theofanis ("Theofanis Decl.") ¶2 **Ex. A** [PAGA Comp.].)

3. In the PAGA Complaint, Plaintiff seeks, among other things, damages for claims that Computershare failed to pay her minimum and overtime wages, failed to provide her with compliant meal and rest breaks, failed to reimburse Plaintiff's business-related expenses; failed to provide Plaintiff with accurate written wage statements; failed to keep accurate records of the Plaintiff; failed to timely pay Plaintiff's current wages; failed to pay Plaintiff's wages as required by contract or statute, and failed to pay Plaintiff's final wages. (PAGA Comp. ¶¶ 1, 5, 15-21, 28-31, 36-40, 43-44, 47-48, 51-52, 55-59, 62-67, 90-94).

4. On December 5, 2024, Computershare was served with copies of the Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and ADR Information Packet. (Theofanis Decl. ¶3 **Ex. B** [Docs. Served on Def.])

5. On January 2, 2025, Computershare filed and served its Answer to Plaintiff's Complaint. (Theofanis Decl. ¶4 **Ex. C** [Def.'s Answer.])

6. As set out more fully below, this action is one over which this Court has original jurisdiction and is one that may be removed to this Court under 28 United States Code §§ 1332(a),

/ / /

---

filing of this notice of removal, as is more fully set forth below.

1441(a) and 1446, because this matter is between citizens of different states and the amount in controversy based on Plaintiff's claims alone is greater than $75,000, as set forth below.

## II. REMOVAL IS TIMELY

7. The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the Defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). Defendant is not obligated to investigate or develop additional facts as to removability upon receipt of the Complaint. *Id*. ("[N]otice of removability...is determined through examination of the four corners of the applicable pleadings, *not* through subjective knowledge or a duty to make further inquiry" by Defendant.).

8. The Ninth Circuit has repeatedly upheld the *Harris* decision in subsequent cases. In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit emphasized that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" as to removability. In *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Court explained that when defendants *do* conduct such an investigation, 28 U.S.C. §§ 1441 and 1446, "read together, permit a defendant to remove outside the two thirty-day periods on the basis of its own information." Any argument that defendants could have removed a case earlier based on information contained within its own records fails.

9. Here, the four corners of the PAGA Complaint do not provide readily ascertainable grounds for removal. The PAGA Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative PAGA representative group.

10. The PAGA Complaint does not provide an estimate as to the number of PAGA members, the frequency of alleged violations of the California Labor Code, nor estimates as to Plaintiff's own experiences. *See*, PAGA Complaint, *passim.* Thus, the time to remove has not yet begun and Defendant may remove based upon its own investigation. *Harris, supra,* 425 F.3d at 694.

11. Accordingly, Defendant's removal is timely.

### III. PLAINTIFF'S COMPLAINT IS REMOVABLE UNDER DIVERSITY JURSIDICTION

12. The basis for removal is that this Court has original jurisdiction of this action under 28 U.S.C. §1332 and it is one which may be removed to this Court by Computershare, pursuant to 28 U.S.C. §1441(b), in that it is a civil action wherein the amount in controversy ("AIC") exceeds $75,000, exclusive of interests and costs, and is a civil action between citizens of different states such that complete diversity exists.  Removal based on Plaintiff's individual claims is appropriate, even though the PAGA Complaint is filed as a class action, so long as the amount in controversy of Plaintiff's individual claims "exceeds the sum or value of $75,000." *See, Patel v. Nike Retail Services, Inc.*, 58 F. Supp. 3d 1032 (N.D. Cal. 2014) (recognizing that removal based on Patel's individual claims appropriate in wage-and-hour class action complaint).

13. Under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file a "notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens,* 574 U.S. 81, 87 (2014). This language "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure" and that "[a] statement short and plain need not contain evidentiary submissions." *Id.* at 84, 87.

14. Both of the requirements for subject matter jurisdiction based on diversity jurisdiction are met here and this case is removable to this Court because: **(a)** there is complete diversity of the parties; Plaintiff is a citizen of California, and Computershare is a citizen of Delaware and Massachusetts; and **(b)** the AIC exceeds $75,000.

    A. **The Citizenship of The Parties is Diverse.**
        1. **Plaintiff is a Citizen of California.**

15. For diversity purposes, an individual is a "citizen" of the state in which she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). An individual's domicile is the place she resides with the intention to remain or to which she intends to return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

16. As set forth in the PAGA Complaint, Plaintiff "is a California resident that worked for Defendants in the County of Sacramento, State of California during the statutory period." (PAGA Comp. ¶8.) As such, Plaintiff is domiciled in and for purposes of diversity jurisdiction is a citizen of the State of California.

17. Accordingly, Plaintiff is domiciled in and for purposes of diversity jurisdiction is a citizen of the State of California.

### 2.     Computershare is Not a Citizen of California.

18. Pursuant to United States Code, Title 28, Section 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." The Supreme Court has established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) (rejecting all prior tests in favor of the "nerve center" test). The Court held that the "'principal place of business' [as contained in Section 1332(c)] is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id.* at 1184. The Court further clarified that the principal place of business was the place where the corporation "maintains its headquarters - provided that the headquarters is the actual center of direction, control and coordination." *Id.*

19. Here, Computershare was, at the time of the filing of this lawsuit, and still is, a corporation incorporated under the laws of Delaware. (ECF[2] 1-2 ¶4.) Computershare's principal place of business and the locations where its executive and senior management personnel coordinate its corporate activities is in Canton, Massachusetts. (*See Id.*) Therefore, as all material times, Defendant has been a citizen of either Delaware or Massachusetts.

20. The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. See 28 U.S.C. § 1441(b)(1); *see also Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that, in determining whether diversity of citizenship exists, only the named defendants are considered).

---

[2] All references to ECF refer to the Court's Docket in Plaintiff's related Class Action in Case No. 2:24-cv-03164-DAD-AC, filed on November 14, 2024.

21. Thus, complete diversity exists between Plaintiff and Computershare.

**B.     The Amount in Controversy Exceeds $75,000.**

22. "[A]s specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart,* 574 U.S. at 89. Legal certainty of the amount in controversy is not required. *See Rodriguez v. AT&T Mobility Servs. LLC,* 728 F.3d 975, 981 (9th Cir. Aug. 27, 2013) ("[a] defendant seeking removal . . . must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum"). "[T]he amount-in-controversy inquiry in the removal context is not confined to the face of the complaint." *Valdez v. Allstate Ins. Co.,* 372 F.3d 1115, 1117 (9th Cir. 2004) (finding that the Court may consider facts presented in the removal petition).[3]

23. To meet this relatively low burden regarding the amount in controversy, a defendant *may* rely on plaintiff's allegations, which are *assumed to be true*, and provide supplementary facts or numbers upon which the amount in controversy can reasonably be calculated. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992); *Rippee v. Bos. Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (allowing the use of "Defendant's own numbers" for "purposes of analyzing the amount in controversy"). In determining whether the jurisdictional minimum is met, the Court considers ***all recoverable* damages,** statutory penalties, and attorney's fees. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347–48 (1977); *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155–56 (9th Cir. 1998).

24. Removal is proper if, from the allegations in the Complaint and the Notice of Removal, it is more likely than not that the value of Plaintiffs' claims exceeds $75,000. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996); *Luckett v. Delta Airlines, Inc.,* 171 F.3d 295, 298 (5th Cir. 1999).

25. Computershare's notice of removal "need not contain evidentiary submissions." *See Dart Cherokee Basin Operating Co., LLC,* 574 U.S. at 84. In showing the amount in

---

[3] Computershare discusses the allegations in Plaintiff's Complaint solely for purposes of demonstrating that the amount in controversy, as pled, exceeds $75,000. By doing so, Computershare in no way concedes that Plaintiff is entitled to damages in excess of the jurisdictional minimum, or to any damages at all.

controversy, Computershare "may rely on reasonable assumptions." *See Arias v. Residence Inn,* 936 F.3d 920, 922 (9th Cir. 2019). The amount in controversy is "simply an estimate of the total amount in dispute . . . . [and] [i]n that sense, the amount in controversy reflects the maximum recovery [a] plaintiff could reasonably recover" on a complaint at the time of removal. *Id.* at 927. Moreover, "[a]n assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that the damages might be less than the requisite amount." *Id.* (quotation marks omitted).

26. It is permissible for Computershare, when the PAGA Complaint does not provide clear indications of the amount in controversy, to rely on employee data and reasonably assumed violation rates based upon the Complaint when determining the amount in controversy. *See Arias,* 936 F.3d at 927. Computershare may rely on "a chain of reasoning that includes assumptions." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d at 1199. Computershare does not need to "provide evidence proving the assumptions correct." *Arias,* 936 F.3d at 927. Instead, "assumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'" *Id.* (citation omitted).

27. While Computershare denies any and all liability to Plaintiff, based on a conservative good faith estimate of the value of the alleged damages in this action, the amount in controversy in this case exceeds $75,000, exclusive of interest and costs.

**C.**     **The Claims at Issue in Determining the Amount in Controversy in this Action**

28. In the PAGA Complaint, Plaintiff seeks, among other things, damages for claims that Computershare failed to pay her minimum and overtime wages, failed to provide her with compliant meal and rest breaks, failed to reimburse Plaintiff's business-related expenses; failed to provide Plaintiff with accurate written wage statements; failed to keep accurate records of the Plaintiff; failed to timely pay Plaintiff's current wages; failed to pay Plaintiff's wages as required

/ / /

/ / /

/ / /

/ / /

by contract or statute, and failed to pay Plaintiff's final wages. (PAGA Comp. ¶¶ 1, 5, 15-21, 28-31, 36-40, 43-44, 47-48, 51-52, 55-59, 62-67, 90-94).[4]

### D. The Relevant Period and Plaintiff's Data

29. The actionable period of this PAGA Complaint is one year and sixty-six days prior to the date that the PAGA Complaint was filed on November 26, 2024. *Clark v. QG Printing II, LLC*, 2023 WL 2843989 at *11 (E.D. CA 2023). Thus, the actionable period here is from **September 21, 2023 until resolution** (the Relevant PAGA Period or "RPP").

30. According to Computershare's business records, Plaintiff has worked for Computershare from **September 20, 2021, to present,** as an **hourly non-exempt full time employee**. (See Declaration of Zachary Minute ("Minute Decl.") ¶¶5-6.)

31. During the RPP, Plaintiff has worked at least **23 pay periods** for Computershare. (*Id*. at ¶10.)

32. 100% of the PAGA penalties sought are properly included in the AIC. *See, e.g., Schiller v. David's Bridal, Inc*., 2010 WL 2793650 at *8. (E.D. Cal. July 14, 2010*); Patel v Nike Retail Services, Inc., supra*, 58 F. Supp. 3d at 1048.

### E. Calculating the Amount in Controversy for Removal

#### 1. Plaintiff's Unpaid Minimum Wage Claim Places at Least $10,100 to the AIC.

33. Plaintiff alleges Computershare "maintained a policy and practice of not paying Plaintiff . . . for *all* hours worked" and failed to pay her (PAGA Comp. ¶ 16) (emphasis added). According to Plaintiff, she was "unable to clock into work, . . . [requiring her] to contact technical support while off the clock to resolve the issue, uncompensated . . . [and was] interrupted during meal breaks, uncompensated." (*Id*.). Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of" failing to pay all minimum wages. (*Id*. at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id*. at ¶¶ 5-6).

---

[4] Although not all of Plaintiff's claims are considered in the amount in controversy, if Plaintiff or the court challenges federal court jurisdiction over this matter, Computershare reserves the right to place such additional claims and amounts in controversy.

34. Plaintiff's allegations support the assumption that at least one minimum wage violation occurred during every payroll period that Plaintiff worked in the RPP. *See e.g., Mendoza v. OSI Indus LLC,* 2022 WL 4291327 at **4-5, EDCV 22-1202 JGB (SPx) (C.D. Cal., Sept. 16, 2022) (denying remand and accepting as reasonable the removing defendant's assumption of 5 unpaid overtime hours per and 5 unpaid minimum wage hours *per week* and per putative class member based on the plaintiff's allegation of a "systematic, company-wide policy and practice" to not pay wages and where the plaintiff failed to specify a violation rate or offered evidence of a rate lower than that assumed by Defendant as reasonable); *Vasquez v. Randstad US, L.P.*, No. 17-cv-04342-EMC, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants' assumption of 2.5 hours per employee *per week* was reasonable for a minimum wage claim Minimum damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work).

35. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: **(a)** civil penalties under section 1197.1 of $100 for the first pay period violation, and $250 for all subsequent pay period violations;[5] and (b) default civil penalties under section 1194 of $100 for the first pay period violation, and $200 for all subsequent pay period violations.[6] (PAGA Comp. ¶¶24, 31 90; Theofanis Decl. ¶7 Ex. E [PAGA Notice pp 2-3, 8-9].)

36. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's minimum wage claim places an AIC of **$10,100**. (Minute Decl. ¶11.)

**2.     Plaintiff's Unpaid Overtime Claim Places at Least $6,750 to the AIC.**

37. Plaintiff alleges "[t]hroughout" the PAGA Period Computershare "maintained a policy and practice of not paying Plaintiff . . . for all hours worked, including all overtime wages." (PAGA Comp. ¶16.) Plaintiff relies on the same allegations as her claim for unpaid minimum wages including having issues clocking in and being interrupted on meal breaks (*Id*.) Plaintiff further alleges "[a]t all relevant times" during the PAGA Period she "worked more than eight hours in a workday" without pay for Computershare. (*Id*. at ¶¶ 35-36.) Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and

---

[5] $100 (1 pay period) + $250 (22 pay periods) = $5,600.
[6] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

practice of" failing to pay all overtime wages. (*Id*. at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id*. at ¶¶ 5-6).

38. Plaintiff's allegations support the assumption that at least one overtime violation occurred during every payroll period that Plaintiff worked in the RPP. *See e.g., Mendoza*, 2022 WL 4291327 at **4-5; *Vasquez*, 2018 WL 327451, at *4; *Wicker v. ASC Profiles LLC*, No. 2:19-CV-02443-TLN-KJN, 2021 WL 1187271, at *3 (E.D. Cal. Mar. 30, 2021) (approving estimate of one unpaid overtime hour, one miss meal break and one missed rest break per week, and 100 percent wage statement violation, based on "pattern and practice" violation despite allegation that limited violations to "but not all" putative class members); *see also Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW (JPRx), 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015) ("because Plaintiffs include separate claims for both failure to pay regular wages and failure to pay overtime, [defendant] properly assumes at least one of each type of violation per week").

39. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (a) default civil penalties under section 1198 of $100 for the first pay period violation, and $200 for all subsequent pay period violations;[7] (b) civil penalties under section 510 (pursuant to 558) of $50 for the first pay period violation, and $100 for all subsequent pay period violations.[8] (PAGA Comp. ¶¶36, 90; PAGA Notice pp 2-3, 8-9.)

40. 41. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's overtime wage claim places an AIC of **$6,750.** (Minute Decl. ¶12.).

### 3. Plaintiff's Meal Period Claim Places at Least $6,750 to the AIC.

41. Plaintiff alleges that Computershare failed to provide compliant meal breaks, and failed to pay related premium wages, in violation of sections 226.7 and 512 of the Labor Code. (PAGA Comp. ¶¶ 42-44, 90; PAGA Notice pp, 3-4, 8).

42. Plaintiff alleges Computershare "wrongfully failed" to provide her with legally required meal periods "[t]hroughout" the PAGA Period and had a "policy and practice" of not providing legally required meal periods. (PAGA Comp. ¶ 17.) According to Plaintiff's allegations,

---

[7] $100 (1 pay period) + $200 (22 pay periods) = $4,500.
[8] $50 (1 pay period) + $100 (22 pay periods) = $2,250.

Computershare "sometimes" required Plaintiff "to work [over] five consecutive hours a day without providing [a] 30-minute, continuous and uninterrupted, duty-free meal period for every five hours of work, or without compensating Plaintiff . . . for meal periods that were not provided by the end of the fifth hour of work or tenth hour of work." (*Id.*) Plaintiff also alleges Computershare "sometimes . . . required [her] to work during [her] meal periods . . . [and] did not adequately inform [her] . . . of [her] right to take a meal period by the end of the fifth hour of work, or, for shifts greater than 10 hours, by the end of the tenth hour of work." (*Id.*) Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of" failing to provide employees with timely and duty-free meal periods, maintain accurate records of all meal periods taken or missed, or pay an additional hour's pay for each workday a meal period violation occurred. (*Id.* at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id.* at ¶¶ 5-6).

43.  Plaintiff's allegations support the assumption that at least one meal break violation occurred during every payroll period that Plaintiff worked in the RPP. *See, Sanchez v. Abbott Labs.*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. Jun. 30, 2021) (approving estimate of two meal period premiums per week, two rest period premiums per week, one unpaid overtime hour per week, 100% violation rate for wage statements, based on the plaintiff's "pattern and practice" allegations, despite Plaintiff's reliance on "but not all" allegations).

44.  For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (a) default civil penalties under section 226.7 of $100 for the first pay period violation, and $200 for all subsequent pay period violations;[9] and (b) civil penalties under section 512 (pursuant to 558) of $50 for the first pay period violation, and $100 for all subsequent pay period violations.[10] (PAGA Comp. ¶¶ 42-44, 90; PAGA Notice pp. 3-4, 8).

45.  Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's meal break claim places an AIC of **$6,750.** (Minute Decl. ¶13.).

---

[9] $100 (1 pay period) + $200 (22 pay periods) = $4,500.
[10] $50 (1 pay period) + $100 (22 pay periods) = $2,250.

### 4. **Plaintiff's Rest Period Claim Places at Least $6,750 to the Amount in Controversy.**

46. Plaintiff alleges that Computershare failed to provide compliant rest breaks, and failed to pay related premium wages, in violation of sections 226.7 and 512 of the Labor Code. (PAGA Comp. ¶¶ 46-48, 90; PAGA Notice pp, 3-4, 8).

47. Plaintiff alleges "[t]hroughout" the PAGA Period, Computershare "failed to authorize and permit Plaintiff" to take legally required rest periods and had a "policy and practice . . . to not authorize and permit Plaintiff . . . to take [legally compliant] rest periods." (PAGA Comp. ¶18.) According to Plaintiff, Computershare "sometimes . . . required Plaintiff . . . to work . . . without . . . authorizing and permitting [her] to take a 10-minute, continuous and uninterrupted, rest period . . . or without compensating Plaintiff. . . [and] did not adequately inform Plaintiff . . . of [her] right to take a rest period." (*Id*.) Plaintiff further alleges Computershare "did not have adequate policies or practices permitting or authorizing rest periods for Plaintiff . . . regarding the timing of rest periods. . . or practices to verify whether Plaintiff . . . [was] taking [her] required rest periods." (*Id*.) Plaintiff asserts Computershare "*cannot demonstrate* that *Plaintiff . . . took rest periods* during the middle of each work period." (*Id.* (emphasis added).) Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of" failing to authorize and permit employees to take timely and duty-free rest periods or pay an additional hour's pay for each workday a rest period violation occurred. (*Id*. at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id*. at ¶¶ 5-6).

48. Like Plaintiff's meal break claim, Plaintiff's allegations support the assumption that at least one meal break violation occurred during every payroll period that Plaintiff worked in the RPP. *See, Sanchez,* 2021 WL 2679057, at *5.

49. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: (a) default civil penalties under section 226.7 of $100 for the first pay period violation, and $200 for all subsequent pay period violations;[11] and (b) civil penalties under section

---

[11] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

512 (pursuant to 558) of $50 for the first pay period violation, and $100 for all subsequent pay period violations.[12] (PAGA Comp. ¶¶ 42-44, 90; PAGA Notice pp, 3-4, 8).

50. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's rest break claim places an AIC of **$6,750.** (Minute Decl. ¶14.).

### 5. Plaintiff's Unreimbursed Business Expense Claim Places at Least $4,500 in Controversy.

51. Plaintiff contends Computershare violated Labor Code section 2802 by failing to reimburse her for required expenses "throughout" the PAGA Period, including, "all reimbursements for her home internet and cellular telephones reimbursements," and for being required to use "personal printers, computers, and office supplies without reimbursement." (PAGA Comp. ¶19.) Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of" failing to indemnify employees for necessary business expenses incurred. (*Id*. at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id*. at ¶¶ 5-6). These allegations support a 100% violation rate for the Section 2802 claim.

52. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: default civil penalties under section 2699(f) of $100 for the first pay period violation, and $200 for subsequent pay period violations.[13] (PAGA Comp. ¶¶ 50-52, 90; PAGA Notice pp, 5, 8-9).

53. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 2802 claim places an AIC of **$4,500**. (Minute Decl. ¶15.).

### 6. Plaintiff's Failure to Furnish Accurate Itemized Wage Statement Claim Places at Least $22,250 to the Amount in Controversy.

54. Plaintiff alleges Computershare failed to provide complete and accurate wage statements, including by failing "to correctly identify the gross wages earned by Plaintiff . . . the failure to list the true "total hours worked by the employee," and the failure to list the true net

---

[12] $50 (1 pay period) + $100 (22 pay periods) = $2,250.

[13] $100 (1 pay period) + $200 (22 pay periods) = $4,500.

13
COMPUTERSHARE'S NOTICE OF REMOVAL

wages earned." (PAGA Comp. ¶62). Plaintiff also alleges that "throughout the statutory period Defendants maintained a systematic, company-wide policy and practice of" failing to provide employees with accurate, itemized wage statements containing all the information required by the California Labor Code and IWC Wage Orders. (*Id.* at ¶5). Plaintiff also alleges that this systematic policy was willful and deliberate. (*Id*. at ¶ 6). These allegations support a 100% violation rate for the 226 claim.

55. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: civil penalties under section 226.3 of $250 for the first pay period violation, and $1,000 for all subsequent pay period violations.[14] (PAGA Comp. ¶¶ 62-67, 90; PAGA Notice pp, 6-7, 8).

56. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's wage statement claim places an AIC of **$22,250.** (Minute Decl. ¶16.).

### 7. Plaintiff's Waiting Time Penalties Claim Places at Least $6,346 in Controversy.

57. Plaintiff alleges that she is a former employee of Computershare, that she was willfully not paid her final wages, and she is entitled up to 30 days wages in waiting time penalties. (PAGA Comp. ¶¶ 1, 20, 54-58, 90; PAGA Notice pp 6, 8-9). As such, based on Plaintiff's allegations, it is reasonable to assume Plaintiff seeks to recover waiting time penalties in an amount equal to 30 days' wages.

58. For this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: 30 days of Plaintiff's wages. (PAGA Comp. ¶¶ 1, 20, 54-58, 90; PAGA Notice pp 6, 8-9).

59. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's waiting time penalty claim places an AIC of **$6,346**. (Minute Decl. ¶17.).

/ / /

/ / /

---

[14] 8 (shift length) (x) $26.44 (average hourly rate) (x) 30 days = $6,346.

        **8.**      **Plaintiff's Labor Code Section 204 Claim Places at Least $9,898 in Controversy.**

60.    Plaintiff alleges that Defendant failed to pay her wages on a timely basis, in violation of section 204, and seeks related default civil penalties. (PAGA Comp. ¶¶ 20, 30, 40, 90; PAGA Notice pp 7-9).

61.    Because Plaintiff's section 204 claim is derivative of her claims for failing to timely pay all overtime and minimum wages, meal period premiums, and rest period premiums she contends were due (PAGA Comp. ¶¶ 20, 30, 40, 90; PAGA Notice pp 7-9), it is reasonable to assume a 100% violation rate for her section 204 claim. *See Wicker*, 2021 WL 1187271, at *4 ("[B]ecause it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence.").

62.    Labor Code section 204 provides that "[a]ll wages earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." (*Id.,* § 204(a).) In other words, Section 204 is concerned with the frequency and timing of wage payments; **not disputes regarding how much an employee is entitled to be paid.** (*Hadjavi v. CVS Pharm., Inc.* (C.D.Cal. Sept. 22, 2010), No. CV 10-04886 SJO (RCx), 2010 WL 7695383, at *2 [Section 204 "deals solely with the timing of wages and not whether these wages were paid"].) The Court of Appeal has confirmed that "[t]he sole purpose of [Section 204] is to require an employer ... to maintain two regular pay days each month, within the dates required in that section." (*See See's Candy Shops, Inc. v. Superior Court* (2012) 210 Cal.App.4th 889, 904-905.) "Despite section 204's use of the word 'wages,' section 204 does not provide for the payment of any wages nor create any substantive right to wages. The only right furthered by the section is the timely payment of wages." (*Id.* (internal citation omitted).)

63.    Thus, section 204 "does not address whether an employer paid the correct amount of wages." *Fuentes v. Maxim Healthcare Servs., Inc.,* 2018 WL 6137619, at *6 (C.D. Cal. Aug. 9, 2018); see also De La Torre v. Am. Red Cross, 2013 WL 5573101, at *5 (C.D. Cal. Oct. 9, 2013)

("Section 204(a) deals solely with the timing of wages and not with whether the correct wages were paid."). As such, Plaintiff's 204 allegation must be that Plaintiff's entire paycheck was late.

64. Labor Code Section 210 allows for recovery of statutory damages for a violation of Section 204's timing-of-pay requirements in the amount of $100 per pay period and $200 for any willful violation, plus 25% of the amount withheld.

65. Because Plaintiff alleges "willful" failures to pay the underlying wages when due (PAGA Comp. ¶¶ 5-6, 20, 30, 24, 40, 43, 47, 90-91 pp 19-23; PAGA Notice pp 7-9), the heightened $200 penalty under Labor Code section 210(a)(2) applies.

66. Accordingly, for this claim, Plaintiff's allegations require the following civil penalties to be included in the AIC: civil penalties under section 210 of $200 per pay period, plus 25% of the amount withheld.[15] (PAGA Comp. ¶¶ 20, 30, 40, 90; PAGA Notice pp 7-9).

67. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 204 claim places an AIC of **$9,898**. (Minute Decl. ¶18.).

### 9. Plaintiff's Labor Code Section 1174 Claim Places at Least $500 in Controversy.

68. Plaintiff alleges that Computershare failed to maintain accurate records of hours worked and wages paid, in violation of Labor Code section 1174, and seeks available penalties under Labor Code section 1174.5. (PAGA Comp. ¶¶ 16-18, 28, 38, 90-92; PAGA Notice pp 4-5.)

69. For this claim, Plaintiff's allegations require the following civil penalty to be included in the AIC: $500 civil penalty under Section 1174.5 for $500 violation of Section 1174. (PAGA Comp. ¶¶ 16-18, 28, 38, 90-92; PAGA Notice pp 4-5.)

70. Thus, as explained in more detail in the declaration submitted by Defendant's data analyst, Plaintiff's section 1174 claim places an AIC of **$500**. (Minute Decl. ¶19.).

### 10. Plaintiff's Attorneys Fee Claim Places at Least $90,000 in Controversy.

71. Plaintiff also seeks to recover an unspecified amount of attorneys' fees. (PAGA Comp. ¶¶ 31, 39, 52, 59, 67, 86, 94, pp. 19-23.) The Ninth Circuit held that where an award of

---

[15] $200 (23 pay periods) + $5,298 (which is 25% of the amount withheld from the 22 pay checks) = $9,898

16
COMPUTERSHARE'S NOTICE OF REMOVAL

attorneys' fees is authorized by statute, a court "must" recognize these fees in the amount in controversy. *See, e.g., Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."); *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 416 (9th Cir. 2018) (*quoting Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644, 648-49 (9th Cir. 2016)) ("The amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.'").

72. The amount of attorneys' fees placed in controversy is the total amount of fees that will likely accrue during the course of litigation. *Lippold v. Godiva Chocolatier, Inc.,* No. C 10–00421, 2010 WL 1526441, at *3–4 (N.D. Cal. Apr. 15, 2010) ("a reasonable estimate of attorneys' fees likely to be expended" should be included in calculating the amount in controversy); *Swans v. Fieldworks, LLC,* No. 222CV07250SPGMRW, 2023 WL 196918, at *2–3 (C.D. Cal. Jan. 17, 2023) ("Defendant has proved beyond a preponderance of evidence that the amount in controversy exceeds $75,000 based on approximately $20,000 in damages and $60,000 in attorneys' fees.").

73. Attorneys' fees in wage and hour cases asserting individual claims **often exceed** $100,000. *See, e.g., Martin v. The Old Turner Inn,* 2003 WL 22998402 (Cal. Sup. 2003) (awarding $147,610 in attorneys' fees and costs in a single plaintiff wage and hour case in which the plaintiff recovered $49,508 in damages); *Cappuccio v. Pepperdine University,* Case. No. 13- cv-3125-DSF-AJWx, 2014 WL 12573366, at *5-6 (C.D. Cal. Sept. 29, 2014) (awarding $102,153.75 in attorneys' fees and costs in a single plaintiff case for violations of the Fair Labor Standards Act in which plaintiff recovered $120,000 in economic damages).

74. Also, courts have recognized that "an attorney handling an individual wage-and-hour case 'typically spends **far more than 100 hours** on the case'." *Swans,* 2023 WL 196918, at *3 (quoting Hernandez, 2020 WL 5496172, at *5) (emphasis added); *see also Lippold,* 2010 WL 1526441, at *4 (asserting that a "typical individual wage and hour case" can generate fees in excess of $100,000 when using a $400 per hour rate for attorneys' fees to meet the amount in controversy); *Hernandez v. Aramark Food & Support Servs. Grp., Inc.,* No. 20-CV-03633-EJD,

17

2020 WL 5496172, at *5 (N.D. Cal. Sept. 11, 2020) (same); *Sasso v. Noble Utah Long Beach, LLC,* No. CV 14-09154-AB (AJWx), 2015 WL 898468, at *6 (C.D. Cal. Mar. 3, 2015) ("Recent estimates for the number of hours expended through trial for employment cases in this district have **ranged from 100 to 300 hours**.") (emphasis added); *Betancourt v. OS Restaurant Servs., LLC*, 83 Cal. App. 5th 132, 134-39 (2022) (claiming over 800 hours and $580,000 in fees and ultimately awarded $280,000 in fees for meal and rest break, waiting time penalty, and wage statement penalty claims where the plaintiff only recovered $15,375).

75. More recently, the court in *Baker v. Tech Data Corp*. held "an estimate of 200 hours through trial is conservative and appropriate" in an individual wage and hour case at $500.00 per hour. Case No. 5:21-cv-02096-JWH, 2022 WL 1080944, at *2 (C.D. Cal. Apr. 11, 2022).

76. Pursuant to the recent decisions issued by the United States Supreme Court and the California Supreme Court, the Plaintiff has brought both **an individual PAGA claim** and a collective action. *Viking River Cruises, Inc v. Moriana,* 596 U.S. 639, 662 (2022); *Adolph v Uber Technologies, Inc.*, 14 Cal. 5th 1104, 1119-23 (2023). As such, the number of hours expended through trial for Plaintiff's **individual PAGA claims** are properly considered in the AIC.

77. Here, Plaintiff's counsel Kane Moon submitted a declaration in connection with a motion for an attorneys fee award in a recent wage and hour matter, *Bert Ryan Benton, individually, and on behalf of all others similarly situated, Plaintiff v. Hot Line Construction, Inc., a Delaware corporation; and DOES 1 through 10, inclusive, Defendant* (Los Angeles Superior Court Case No. 21STCV47377).  (Theofanis Decl. ¶5 Ex. D [Moon Decl.] p 20 ¶38.)  Mr. Moon's declaration states his billable rate as of the date of the declaration, May 29, 2024, was **$900** per hour.

78. Here, 100 hours at an billable rate of $900 per hour is a conservative estimate. Computershare expects Plaintiff's counsel will spend far in excess of 100 hours on this matter given anticipated pre-discovery litigation, including conferences on various responsive motions, stipulations on briefing schedules regarding the same, and briefing various responsive motions. (Theofanis Decl. ¶6.)

///

79. Thus, conservatively assuming **100 hours** of work on this matter, and conservatively estimating an average billable rate for Plaintiff's counsel of $900/hour, Plaintiff's request for attorney's fees conservatively places **$90,000** in controversy for attorney fees alone.

**11.    Summary of Amount in Controversy**

80. As set forth above, and while Computershare denies that Plaintiff is entitled to recover any such amounts, the allegations in the Complaint satisfy the requisite $75,000 amount in controversy for purposes of removal under 28 U.S.C. Sections 1332, 1441(a) and 1446:

| Claims Seeking Civil Penalties | Amount in Controversy |
|---|---|
| Unpaid Minimum Wage | $10,100 |
| Unpaid Overtime | $6,750 |
| Meal Period | $6,750 |
| Rest Period | $6,750 |
| Unreimbursed Business Expense | $4,500 |
| Wage Statement Penalty Claim | $22,500 |
| Waiting Time Penalty Claim | $6,346 |
| Section 204 | $9,898 |
| Section 1174 | $500 |
| **SUBTOTAL** | **$73,844** |
| **Attorneys' Fees** | $90,000 |
| **TOTAL** | **$163,844** |

(Minute Decl. ¶20.)

**IV.   VENUE**

81. Venue lies in this Court because Plaintiff's action is pending in this district and division. See 28 U.S.C. § 1441(a). Under United States Code, Title 28, Section 1441(a), this case may properly be removed to the Eastern District of California because Plaintiff filed this case in the

Superior Court of California, County of Sacramento. Additionally, Computershare is informed and believes that the events allegedly giving rise to this action occurred within this judicial district.

## V. SATISFACTION OF REQUIREMENTS OF 28 U.S.C. § 1446

82. In accordance with United States Code, Title 28, Section 1446(a), Exhibit B to the Declaration of George J. Theofanis constitute a copy of all processes, pleadings, and orders either served upon or by Computershare. As required by United States Code, Title 28, Section 1446(b), the Notice of Removal was filed within 30 days after Computershare was served with Plaintiff's Complaint. As required by United States Code, Title 28, Section 1446(d), Computershare will provide notice of this removal to Plaintiff through her attorneys of record and a copy of this Notice of Removal will be filed with the Superior Court of the State of California for the County of Sacramento.

## VI. CONCLUSION

83. Because this civil action is between citizens of different States and the matter in controversy exceeds $75,000, exclusive of interest and costs, Computershare respectfully requests that this Court exercise its removal jurisdiction over this action.

84. In the event this Court has a question regarding the propriety of this Notice, Computershare requests the Court set an evidentiary hearing so that it may have an opportunity to more fully brief the Court on the basis for this removal.

WHEREFORE, Computershare removes this action to this Court.

DATED: January 6, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ George J. Theofanis
    Michael J. Nader
    George J. Theofanis

Attorneys for Defendant
COMPUTERSHARE INC.